# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ] | |
| | ] | |
| **v.** | ] | **2:18-cr-00411-ACA-JEO** |
| | ] | |
| **GABRIEL MALDONADO CARDENAS** | ] | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the court on Defendant Gabriel Maldonado Cardenas' motion to suppress evidence. (Doc. 18). A magistrate judge issued a report recommending that the court deny the motion to suppress (doc. 31), and Mr. Cardenas filed objections to the report and recommendation (doc. 37). As required by 28 U.S.C. § 636, the court reviews de novo the parts of the report and recommendation to which Mr. Cardenas objected.

Mr. Cardenas moves to suppress a gun and two cell phones that agents seized after stopping him in his car. (Doc. 18 at 3; Doc. 30 at 71–72). The magistrate judge held a suppression hearing at which Agent Jason Green, a task force officer with the Drug Enforcement Administration ("DEA") and a detective with the Pelham Police Department, testified. (Doc. 30 at 4–5). Mr. Green testified that in August 2018, he was providing support for a "buy/bust" operation, in which the DEA orders drugs and makes an arrest at the scene of the sale. (*Id.* at 6). The target of the operation was Mr. Cardenas' co-defendant, Jorge Flores, and

the buy/bust was supposed to happen at a restaurant called Mundo Latino. (*Id.* at 7–8, 21–22). The agents suspected that Mr. Flores used an apartment—known as a "stash house"—about two and a half miles away from Mundo Latino to store the drugs. (*Id.* at 11, 58–60).

On the day of the operation, Agent Green parked his unmarked car in a church parking lot situated about 500 feet away from Mundo Latino and waited there alone. (Doc. 30 at 8, 16). As he waited in his car, other agents conducting surveillance radioed that Mr. Flores had left the block where his stash house was located, driving a maroon Nissan. (*Id.* at 10–11). They also stated that a Hispanic man driving an older model black Ford Ranger with FX4 stickers had left the same block and "appeared to be traveling in tandem" with Mr. Flores. (*Id.* at 10–11, 49, 58).

As Agent Green sat in his car waiting, he heard over the radio that Mr. Flores had arrived at the restaurant. (Doc. 30 at 51). Agents reported on the radio that a cooperating source was having a conversation with "someone." (*Id.* at 52). After a few minutes had passed, agents gave the arrest signal and Agent Green began to move his car. (*Id.* at 12, 52–53). As he started to move, he saw an older black Ford Ranger with an FX4 sticker, driven by a Hispanic male—later revealed to be Mr. Cardenas—driving away from Mundo Latino. (Doc. 30 at 12–13). Mr. Cardenas made eye contact with Agent Green as he drove by, then turned

"completely around" to look back toward the restaurant where the arrest was taking place. (*Id.* at 13). Without slowing down, he made an illegal U-turn in front of the church. (*Id.* at 13, 15, 41–42).

Agent Green testified that his attention was drawn to the Ford Ranger because of the combination of (1) the Ford Ranger matching the description of the car traveling in tandem with Mr. Flores and (2) Mr. Cardenas turning completely around then pulling a U-turn without slowing down. (Doc. 30 at 41–42). He stated that in his experience, drug dealers frequently have other people nearby during a drug sale. (*Id.* at 13–14). Suspecting that Mr. Cardenas might be involved in the drug deal or might be going back "to do something to the officer making the arrest" (*id.* at 19–20), Agent Green decided to stop the Ford Ranger by pulling his unmarked truck out in front of it (*id.* at 14–15). He wanted to make contact with Mr. Cardenas so that the officers could investigate whether he was involved and what his intentions were. (*Id.* at 19–20).

As Agent Green pulled his truck out in front of the Ford Ranger, he turned on his lights and siren to ensure that Mr. Cardenas would see and hear him. (Doc. 30 at 16). Mr. Cardenas stopped his truck about four feet away from the driver's side of Agent Green's truck. (*Id.* at 15). Agent Green ordered Mr. Cardenas to show his hands, and decided to get out of his truck because he worried that Mr. Cardenas might drive the Ford Ranger into his truck and pin him inside. (*Id.* at

16).  He drew his weapon and moved around the Ford Ranger while commanding Mr. Cardenas to get out of the car.  (*Id.*).  Mr. Cardenas sat in his truck with his hands on the steering wheel, without moving or otherwise responding to Agent Green's commands.  (*Id.*).  Agent Green decided that he needed to get Mr. Cardenas out of the truck so that he could not attempt to drive away, so he opened the driver's side door of the truck, grabbed Mr. Cardenas' hand from the steering wheel, and pulled him out of the truck.  (*Id.* at 16–17).

As Agent Green pulled Mr. Cardenas out of the truck, he saw a handgun fall from between Mr. Cardenas' legs.  (Doc. 30 at 17, 35–36).  Agent Green finished pulling Mr. Cardenas out of the truck, placed him on the ground, and handcuffed him.  (*Id.* at 17–18).  At this point, other officers appeared.  (Doc. 30 at 18).  Those officers seized the gun and eventually two cell phones found in Mr. Cardenas' pockets.  (*Id.* at 18, 71–72).

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]"  U.S. Const. amend. IV.  "[T]he general rule [is] that Fourth Amendment seizures are reasonable only if based on probable cause to believe that the individual has committed a crime."  *Bailey v. United States*, 568 U.S. 186, 192 (2013) (quotation marks omitted).  But "the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion

supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30). Courts refer to that kind of stop as a "*Terry* stop."

The magistrate judge recommended this court find that Agent Green conducted a *Terry* stop for which the government had established reasonable suspicion. (Doc. 31 at 9–10). In the alternative, the magistrate judge stated in a footnote, Agent Green had probable cause to believe Mr. Cardenas was involved in drug trafficking. (*Id.* at 10 n.6). Mr. Cardenas objected to the report and recommendation, conceding that if the stop were an investigative stop, the facts would support a finding of reasonable suspicion, but arguing that this was actually a full arrest, and the government had not met its burden of establishing probable cause. (Doc. 37 at 2–3). Thus, the question before this court is whether Agent Green's actions constituted a *Terry* stop or an arrest.

In deciding whether a stop was a *Terry* stop or an arrest, the Eleventh Circuit has applied "four non-exclusive factors . . . . : the law enforcement purposes served by the detention, the diligence with which the police pursue the investigation, the scope and intrusiveness of the detention, and the duration of the detention." *United States v. Acosta*, 363 F.3d 1141, 1146 (11th Cir. 2004). "[A]n investigatory stop is not an arrest despite the fact that a reasonable person would not believe he was free

to leave." *United States v. Blackman*, 66 F.3d 1572, 1576 (11th Cir.1995) (emphasis omitted).

The first factor is the law enforcement purpose served by the stop. *Acosta*, 363 F.3d at 1146. In this case, the purpose was to allow Agent Green to prevent Mr. Cardenas from returning to the scene of Mr. Flores' arrest and to question him about whether he was involved in the drug deal. Agent Green did not stop Mr. Cardenas in order to search him or the car. *See Acosta*, 363 F.3d at 1146. ("In analyzing the first factor . . . we have stated that the most important consideration is whether the police detained the defendant to pursue a method of investigation that was likely to confirm or dispel their suspicions quickly, and with a minimum of interference.") (quotation marks and alterations omitted). Accordingly, the first factor weighs in favor of finding that this was a *Terry* stop.

The court will address the second and fourth factors together. The second factor is the diligence with which the police pursue the investigation, and the fourth factor is whether the duration of the detention was reasonable. *Acosta*, 363 F.3d at 1146. Agent Green acted promptly when he stopped Mr. Cardenas and removed him from the car. These factors also weigh in favor of finding that this was a *Terry* stop.

The third and final factor in this case is the scope and intrusiveness of the detention. *Acosta*, 363 F.3d at 1146. In analyzing this factor, the court must "ask

whether the scope and intrusiveness of the detention exceeded the amount reasonably needed by police to ensure their personal safety." *Id.* As long as an officer possesses "an articulable and objectively reasonable belief that the suspect is potentially dangerous," the officer may "take reasonable steps to ensure [his] safety." *Id.* at 1146–47 (citing *Michigan v. Long*, 463 U.S. 1032, 1051 (1983). The fact that an officer draws his weapon or handcuffs a suspect does not by itself cause a *Terry* stop to become an arrest. *Id.*

As Mr. Cardenas concedes, Agent Green had reasonable suspicion to believe Mr. Cardenas was involved in wrongdoing, and specifically the drug deal set to occur 500 feet away in the Mundo Latino parking lot. (*See* Doc. 37 at 3). Agent Green testified that he pulled out in front of Mr. Cardenas and yelled for him to show his hands and get out of the vehicle. (Doc. 30 at 15–16). Mr. Cardenas' hands remained on the steering wheel and he did not respond to Agent Green's commands. (*Id.*). With Mr. Cardenas' truck stopped only four feet from the driver's side of Agent Green's truck, Agent Green feared that Mr. Cardenas might try to either ram his truck or drive away. (*Id.*) at 15–17). Based on these facts, the court finds that Agent Green had an articulable and reasonably objective belief that Mr. Cardenas was dangerous. *See Long*, 463 U.S. at 1051. Accordingly, Agent Green's decision to draw his gun and to pull Mr. Cardenas out of the truck was

reasonable and does not convert the stop into an arrest.  *See Acosta*, 363 F.3d at 1146–47.

The court finds that the totality of the circumstances counsel in favor of finding that Agent Green conducted a *Terry* stop.  Thus, the government needed to establish only that Agent Green had a reasonable suspicion of wrongdoing. *Sokolow*, 490 U.S. at 7.  The government satisfied that burden.[1]  Accordingly, the court **OVERRULES** the objections, **ADOPTS** the magistrate judge's recommendation, and **DENIES** the motion to suppress.

**DONE** and **ORDERED** this January 9, 2019.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE

---

[1] The court will not address the magistrate judge's alternative recommendation that Agent Green had probable cause to believe Mr. Cardenas was involved in drug trafficking.